UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

SOUTHLAND MANAGEMENT
CORPORATION,

        Plaintiff,

        v.                            Case No. 11-C-626

RSUI INDEMNITY COMPANY,

        Defendant.

---

DECISION AND ORDER GRANTING MOTION TO DISMISS
OR FOR JUDGMENT ON THE PLEADINGS (DOC. 19)

Defendant, RSUI Indemnity Company, filed a motion to dismiss based on claim preclusion, issue preclusion, law of the case, and/or claim splitting. RSUI cites to Fed. R. Civ. P. 12(b)(6) and 12(c) as the grounds for its motion. The court is treating the motion pursuant to Rule 12(c), as RSUI answered the complaint before filing the motion and the motion rests on certain affirmative defenses. (*See* Answer at 9-10.)

Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see* Fed. R. Civ. P. 12(c). The court reviews a Rule 12(c) motion using the same standard that applies to Rule 12(b)(6) motions, granting the motion if plaintiff cannot prove any facts supporting the claim for relief. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). All facts alleged in the complaint are taken as true, with all reasonable inferences drawn in plaintiff's favor. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). However, facts that undermine the plaintiff's claim are not ignored. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. The essence

of a Rule 12(b)(6) motion is that assuming the facts are accurate, plaintiff has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

Although res judicata (a/k/a claim preclusion) and collateral estoppel (a/k/a issue preclusion) are affirmative defenses that often require reference to matters outside of the pleadings, a court may take judicial notice of matters in the public record, including documents filed in previous cases, without converting a motion to dismiss or for judgment on the pleadings into a motion for summary judgment. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

In this case, the court takes judicial notice of all filings and court proceedings in *Edgewood Manor Apartment Homes, LLC v. RSUI Indemnity Co.*, No. 08-C-920 (E.D. Wis.) ("*Southland I*"), a case over which this court presided. Included in the documents of which this court takes notice are transcripts of hearings or conferences, the parties' briefs and the court's decision on cross-motions for summary judgment, an exhibit known as "Amendment Eight" and a cover letter written to the court by Southland's counsel, the judgment, and the recent decision denying the *Southland I* plaintiffs' motion to vacate. Plaintiff in this case, Southland Management Corporation, was one of the two plaintiffs in *Southland I*, which was dismissed. With due regard for the proceedings in *Southland I* and the doctrine of res judicata, this case must be dismissed as well.

This case and *Southland I* are virtually identical, and issues key to the present case were determined in *Southland I*. Any difference in claims could have been litigated in *Southland I* but was not.

The doctrine of res judicata "prevents the relitigation of claims already litigated as well as those that could have been litigated but were not." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). The doctrine is meant to prevent "claim splitting," *id.*, meaning the tactic of filing two lawsuits over one injury, *Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995). Multiple lawsuits

> impose[] needless costs on one's adversary, on the judicial system, and on other litigants, who must endure a longer queue. Plaintiffs hope that more suits will improve their chances: they seek the better of the outcomes. To discourage the tactic, judges award plaintiffs not the better outcome but the first outcome: whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation.

*Id.*

*Southland I* was a federal lawsuit. Whether an earlier federal court judgment precludes subsequent cases or claims is a question of federal res judicata law. *Palka*, 662 F.3d at 437. Federal res judicata "has three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Id.*

Southland does not dispute that it was a plaintiff in *Southland I*, so element (1) is met. That an additional plaintiff was involved in *Southland I* is irrelevant. *See Palka*, 662 F.3d at 437.

Element (3) is met as well. Identity exists when the two cases are premised on the same transaction, meaning that they share the same operative facts. *Id.* Here, the allegations set forth in the present case are substantially identical to those in *Southland I*. Those allegations include reference to the same insurance policy, the same real property, the same triggering event for insurance coverage (Hurricane Katrina) for the same

3

property, and, importantly, the very same refusal by RSUI to pay claimed insurance benefits for repair and replacement and code upgrade costs. The only factual difference is that in *Southland I* repairs and replacement of the property were not alleged to have been completed, whereas in the present case the repairs and replacement were allegedly performed. (*See* Compl. ¶ 25.) Importantly, RSUI's allegedly wrongful acts are the same in both cases. In both cases, Southland asserted that RSUI was obligated but refused to pay repair and replacement insurance and code upgrade proceeds under the same provisions of the same policy for the same event of loss on the same property for the same reasons.

The difference between the cases is one of Southland's legal theories. Southland's second claim in each case, for bad faith, is identical. But in *Southland I* an anticipatory breach of the policy by RSUI is asserted, and Southland brought the claim seeking a declaration that the policy obligated RSUI to pay repair and replacement costs because of the anticipatory breach.

Here, Southland claims actual breach of contract because RSUI refused to pay once repairs and replacement were completed. The factual transaction is the same in both cases. However, the different legal theories are immaterial for application of res judicata.

During the pendency of *Southland I* this court noticed that repairs and replacement had been completed and offered Southland and its co-plaintiff the opportunity to supplement its summary judgment filings with evidence regarding repairs. *See Southland I*, minutes (E.D. Wis. June 24, 2010). Southland chose not to add evidence or to submit the issues of repair or replacement to this case, mentioning that such information was

4

irrelevant to its declaratory judgment claim. *Southland I,* Suppl. Br. at 1-2 (E.D. Wis. filed July 12, 2010).

Instead, Southland filed the present case in December 2010 in the Southern District of Mississippi. After the case was transferred to this court (on June 28, 2011), the court held a joint status or scheduling conference on July 13, 2011, and asked counsel for Southland why it had filed this second lawsuit. Counsel replied:

> The reason that that complaint was filed in Mississippi was that we were in the pendency of waiting for ruling on motions for summary judgment and we were concerned simply with a statute of limitations issue and wanted to make sure that we had a case on file stating that claim. And there was concern whether we could amend the complaint here and have that done timely.
>
> So that was the only reason. And the case had been transferred here and my proposal remains that we would amend the case before you to include the breach of contract claim and that would obviate – eliminate the need for this other action to be in existence.

(Silver Aff. Ex. 4 at 3-4.) Hence, Southland essentially admitted that its breach of contract claim could have been added to *Southland I*. It does so again in its brief in this case, stating that if *Southland I* is reopened, the complaint in that case could be amended to include the breach of contract claim of this case. (Pl.'s Mem. of Law in Opp'n at 11.)

That repair and replacement as claimed did not occur until after the *Southland I* case was filed does not alter the analysis. *See Palka*, 662 F.3d at 438 (rejecting argument that plaintiffs could not add their Title VII claim to their earlier-filed case under 42 U.S.C. § 1983 because they were waiting for a right-to-sue letter). Repetition of Southland's bad faith claim in a second action is exactly what the doctrine of res judicata is meant to prevent. And the cleaving of Southland's anticipatory breach claim from its breach of contract claim is a prime example of impermissible claim splitting. Having risked splitting

5

its claims, Southland must live with the consequence that the first case that goes to judgment precludes consideration of the second.

Southland's primary opposition to dismissal under the res judicata doctrine is based on element (2). Judgment was entered in *Southland I* case on July 13, 2011, at docket number 98. However, Southland argues that no judgment *on the merits* exists in *Southland I* because the court dismissed its claims for lack of standing. But Southland is incorrect. In *Southland I* this court dismissed the claims of Edgewood Manor for lack of standing, whereas Southland's claims were determined on the merits. The court dismissed Southland's bad faith claim and its anticipatory breach claim as to code upgrade insurance proceeds on the merits in a decision of March 23, 2011. As discussed in more detail in the decision denying Southland's motion to vacate the dismissal of the *Southland I* case, the repair and replacement proceeds claim was also on the merits. Thus, a judgment on the merits of all of Southland's claims exists in *Southland I*.

Southland also contends that the pending motion to vacate in *Southland I* should prevent dismissal of this case. However, the motion to vacate did not alter the fact that a judgment on the merits remained in effect for res judicata purposes. *See Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (noting that pendency of an appeal does not affect the finality of a judgment for res judicata purposes). Moreover, the motion to vacate has now been denied.

Southland submits that under Wisconsin law there is an exception to claim preclusion when the first action was one for declaratory judgment; in such a case the first action is binding only to matters actually litigated, not those that could have been litigated. (Pl.'s Mem. of Law in Opp'n at 4.) Assuming for argument's sake that Wisconsin law would

6

apply even though the judgment in *Southland I* is a federal court judgment, as discussed below the determinative issues for the present case were litigated in *Southland I*. Thus, this case is barred by res judicata.

Even if res judicata did not bar prosecution of the present case, the doctrine of collateral estoppel would result in dismissal. Collateral estoppel applies when (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *In re Grand Jury Proceedings of Special April 2002 Grand Jury*, 347 F.3d 197, 201-02 (7th Cir. 2003). Again, because Southland is the plaintiff in both cases, element (4) is satisfied. And the court takes judicial notice, based on the record in *Southland I* that Southland was fully represented by counsel in the earlier case.

Issues dispositive of the present case are the same as those already litigated and determined in *Southland I* and essential for that judgment. The bad faith claim—identical in both cases, not labeled as a declaratory judgment claim, and seeking damages rather than a declaration—was dismissed on the merits in *Southland I* in this court's decision of March 23, 2011, before the present case was even transferred to this district. The validity of that claim was litigated and determined fully in *Southland I* in RSUI's favor. As for Southland's present claim for $500,000 in code upgrade costs, in *Southland I* this court determined that RSUI had no obligation to pay those proceeds because any claim for code upgrade proceeds was time-barred after August 29, 2007. Because, as found in *Southland I*, no repairs or replacement were made within two years of Hurricane Katrina, RSUI cannot be liable for code upgrade proceeds under the policy regardless of whether Southland's

7

theory is anticipatory breach or actual breach. That determination disposes of Southland's code upgrade proceeds claim in this case just as it did *Southland I*. And, finally, this court determined in *Southland I* (during the hearing of July 13, 2011, and as discussed in the recent decision denying the motion to vacate) that Southland lost its insurable interest when it sold the Property on February 12, 2008, and it cannot recover for repairs or replacement carried out by the purchaser after sale. That determination is just as dispositive of the remainder of Southland's claim for breach of contract as it was the claim based on anticipatory breach. Thus, the court's rulings on the merits in *Southland I* collaterally estop all of Southland's claims in the present case.

Two points are worthy to note regarding Southland's contention of improper or unfair process in *Southland I*. First, the excerpts from hearings in March, May, and July 2011 that Southland quotes in its opposition brief focus on comments concerning mediation, whereas the hearings contained significant discussion of Amendment Eight and Southland's failure to provide evidence of any assignment of rights to Edgewood Manor Apartment Homes, LLC. The court in this case has taken judicial notice of the entirety of the proceedings in *Southland I* over which it presided, and has found that no improper or unfair process occurred as discussed in the recent *Southland I* decision. Second, Southland's argument respecting improper or unfair process applies solely to the last remaining claim for repair or replacement proceeds. Dismissal of Southland's claims for code upgrade proceeds and bad faith damages occurred after full briefing (plus supplemental briefing) of the *Southland I* parties' cross-motions for summary judgment. That those claims were litigated fully in fair proceedings is unassailable. For these reasons,

8

IT IS ORDERED that RSUI's Motion to Dismiss (Doc. 19) is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2012.

> BY THE COURT
>
> /s/ C. N. Clevert, Jr.
> C. N. CLEVERT, JR.
> CHIEF U. S. DISTRICT JUDGE